ROBIN D. BALL (State Bar No. 159698)
rball@chadbourne.com
CHADBOURNE & PARKE LLP
350 South Grand Avenue, 32nd Floor
Los Angeles, California 90071
Telephone:  (213) 892-1000
Facsimile:  (213) 892-2045

Scott S. Balber *(Adm. pro hac vice)*
sbalber@chadbourne.com
Jonathan C. Cross *(Adm. pro hac vice)*
jcross@chadbourne.com
CHADBOURNE & PARKE LLP
30 Rockefeller Plaza
New York, New York 10112
Telephone:  (212) 408-5100
Facsimile:  (212) 541-5369

Attorneys for Plaintiff and Counterdefendants
LFG NATIONAL CAPITAL, LLC, LAWFINANCE GROUP, INC., and LFG SERVICING, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| LFG NATIONAL CAPITAL, LLC,<br><br>Plaintiff,<br><br>v.<br><br>GARY, WILLIAMS, FINNEY, LEWIS, WATSON & SPERANDO, P.L., WILLIE GARY, and LORENZO WILLIAMS,<br><br>Defendants.<br><br>GARY, WILLIAMS, FINNEY, LEWIS, WATSON & SPERANDO, P.L.,<br><br>Counterclaimant,<br><br>v.<br><br>LFG NATIONAL CAPITAL, LLC, LAWFINANCE GROUP, INC., and LFG SERVICING, LLC<br><br>Counterdefendants. | Case No. CV11-09988 PSG (PJWx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LFG NATIONAL CAPITAL, LLC, LAWFINANCE GROUP, INC., AND LFG SERVICING, LLC'S RENEWED MOTION TO TRANSFER VENUE**<br><br>Hearing Date: February 27, 2012<br>Time: 1:30 p.m.<br>Judge: Honorable Philip S. Gutierrez<br>Courtroom: 880 |

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................1

PROCEDURAL HISTORY .......................................................................................2

ARGUMENT ..............................................................................................................3

    A.    Standard for Transfer of Venue ................................................................3

    B.    The New York Court Is The Appropriate Venue For This Action ............4

        1.    The Action Could Have Originally Been Brought In The New York Court ...................................................................................4

            a.    The New York Court Has Subject Matter Jurisdiction Over the Dispute ................................................................4

            b.    The New York Court Has Personal Jurisdiction Over the Defendants ..................................................................6

        2.    Plaintiff Need Not Show a "Change in Circumstances" to Justify a Change of Venue, But Has Made Such a Showing ............7

        3.    The Relevant Factors Militate In Favor of Transferring this Action to the New York Court .......................................................8

            a.    The Simpson Escrow Fund, As Collateral Under the Loan Agreement, is Property That is the Subject of This Action ...................................................................................8

            b.    Judicial Economy Favors Venue in the New York Court ......9

            c.    New York is a More Convenient Forum for All Parties ......10

    C.    Defendants Have Admitted that the New York Court is the Appropriate Forum for the Dispute .........................................................12

CONCLUSION .........................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

3H Enters., Inc. v. Dwyre
  182 F. Supp. 2d 249 (N.D.N.Y. 2001)................................................................6

Boeing Co. v. Van Gemert
  444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980) .........................................5

Boykin v. McCoy
  384 Fed. Appx. 579 (9th Cir. 2010) ....................................................................6

Corporacion Venezolana de Fomento v. Vintero Sales Corp.
  477 F. Supp. 615 (S.D.N.Y. 1979) ......................................................................5

Edwards v. Mallory
  No. C-96-2049, 1996 WL 681973 (N.D. Cal. Nov. 18, 1996).......................4, 8

Egri v. Connecticut Yankee Atomic Power Co.
  270 F. Supp. 2d 285 (D. Conn. 2002) .............................................................5, 6

Eyak Native Village v. Exxon Corp.
  25 F.3d 773 (9th Cir. 1994)..................................................................................5

F.T.C. v. Watson Pharms., Inc.
  611 F. Supp. 2d 1081 (C.D. Cal. 2009) .........................................................4, 10

Fisher v. Las Vegas Hilton Corp.
  47 Fed. Appx. 824 (9th Cir. 2002) ......................................................................4

Foster-Milburn Co. v. Knight
  181 F.2d 949 (2d Cir. 1950).................................................................................6

Gatdula v. CRST Int'l, Inc.
  No. CIV. 2:10-58, 2011 WL 445798 (E.D. Cal. Feb. 08, 2011) ........................7

Hamilton v. State Farm Fire & Cas. Co.
  270 F.3d 778 (9th Cir. 2001)..............................................................................14

Howard v. Judge Law Firm
  Civ. No. 09-1644, 2010 WL 2985686 (D. Minn. July 26, 2010) ......................11

CHADBOURNE & PARKE LLP
350 South Grand Avenue, 32nd Floor
Los Angeles, CA  90071 (213) 892-1000

In re Johns-Manville Corp.
   600 F.3d 135 (2d Cir. 2010)..................................................................................7

Jones v. GNC Franchising, Inc.
   211 F.3d 495 (9th Cir. 2000)..................................................................................4

Joye v. Heuer
   66 F.3d 316, 1995 WL 552028 (4th Cir. 1995) .....................................................7

King-Scott v. Univ. Med. Pharm. Corp.
   No. 09-cv-0251, 2010 WL 1815431 (S.D. Cal. May 6, 2010) ..............................9

Leskinen v. Halsey
   No. 2:10–cv–03363, 2011 WL 4056121 (E.D. Cal. Sept. 12, 2011)................4, 8

M.L. Private Finance LLC v. Minor
   No. 08 Civ. 11187, 2011 WL 1900613 (S.D.N.Y. May 19, 2011)......................6

Maya v. Centex Corp.
   658 F.3d 1060 (9th Cir. 2011).................................................................................5

Metz v. U.S. Life Ins. Co. in City of New York
   674 F. Supp. 2d 1141 (C.D. Cal. 2009)................................................................11

Peros v. Nutribiotic, Inc.
   No. 1:10-cv-2376, 2011 WL 87166 (E.D. Cal. Jan. 10, 2011).............................5

Rabiea v. First Nat. Bank of Pennsylvania
   No. CV 08-0603, 2008 WL 2562004 (E.D.N.Y. June 26, 2008) .....................4, 8

Sluys v. Hand
   831 F. Supp 321 (S.D.N.Y. 1993).........................................................................6

Stone v. Patchett
   No. 08 CV 5171, 2009 WL 1108596 (S.D.N.Y. April 23, 2009).........................6

Trinity Indus., Inc. v. Myers & Assocs., Ltd.
   41 F.3d 229 (5th Cir. 1995)....................................................................................6

Van Dusen v. Barrack
   376 U.S. 612 (1964)................................................................................................3

Wash. Pub. Utils. Grp. v. U.S. Dist. Court for W. Dist. of Wash.
   843 F.2d 319 (9th Cir. 1987)..................................................................................7

West Coast, Inc. v. Snohomish County
   33 F. Supp. 2d 924 (W.D. Wash. 1999) ....................................................... 9, 10

**FEDERAL STATUTES**

28 U.S.C. § 1367 ............................................................................................................. 5

28 U.S.C. § 1391(b)(2) ................................................................................................... 4

28 U.S.C. § 1404(a) ................................................................................................ passim

**OTHER AUTHORITIES**

51 Am. Jur. 2d Liens § 13 ............................................................................................... 9

CHADBOURNE & PARKE LLP
350 South Grand Avenue, 32nd Floor
Los Angeles, CA  90071 (213) 892-1000

# MEMORANDUM OF POINTS AND AUTHORITIES
# PRELIMINARY STATEMENT

Transfer of venue is appropriate in this case because, after the Complaint was filed in this Court, a substantial share of the funds representing the ultimate subject matter of this dispute have been placed into an escrow account by order of the Hon. David N. Hurd of the United States District Court for the Northern District of New York (the "New York Court"). These funds, consisting of a stream of court-ordered payments of costs and attorney's fees totaling approximately $7 million in an employment discrimination class action (the "Simpson case"), have been escrowed pending the further order of Judge Hurd. The New York Court indisputably possesses the exclusive authority to direct the release of these sums from escrow, because they represent a fund created by a class action settlement approved by that court, and are held in an escrow account pending its further direction.

As such, the continued litigation of this dispute in the Central District of California will result in a duplication of effort and waste of judicial resources, creating needless inconvenience and unnecessary expense to both Plaintiff and Defendants. Plaintiff will inevitably be forced to present its claim on the merits to Judge Hurd in order to demonstrate its entitlement to the funds escrowed in the Simpson case. The propositions of law and fact which Plaintiff must show in order to obtain the release of the Simpson escrow overlap entirely with Plaintiff's claim in this action against Gary, Williams, Finney, Lewis, Watson & Sperando, P.L. ("the Firm"), insofar as Plaintiff must show that the Firm breached the Loan Agreement with Plaintiff, and that the Firm is liable to Plaintiff for the loan balance, in order to exercise its right as a secured lender of the Firm to obtain the release of the escrowed funds.

The simultaneous litigation of the same issues, between the same parties, in two different federal courts located on opposite coasts, serves no legitimate interest. It would entail a doubling of litigation costs for both Plaintiff and Defendants; a "race to judgment" in which the rulings of the first court to reach the merits would estop and

preclude the dispositive issues in the other court; and a pointless waste of judicial resources as two different District Courts proceed along parallel tracks in adjudicating the same dispute.

Because the Simpson escrow fund represents a judicially-created fund, and by his own order, only Judge Hurd is empowered to direct the disposition of that fund, these negative outcomes can only be avoided by a transfer of venue to the New York Court.[1] Indeed, Defendants have admitted that the New York Court is the appropriate forum for disputes of this sort. The motion should therefore be granted.

## PROCEDURAL HISTORY

This action was filed on May 26, 2011, and promptly served thereafter. See D.E. #1. On June 9, 2011, after Plaintiff and a putative junior secured creditor of the Firm, GE Capital Corporation ("GE Capital"), asserted claims to the fees and costs to be paid to the Firm in the Simpson case, Judge Hurd entered an Order (the "June 9 Order") directing that the defendants in that case tender to the law firm of Sussman & Watkins (the Firm's local counsel) "a check . . . for the Gary Law Firm's share (two-thirds) of the initial attorney's fee payment . . . and the balance of the costs owed by the defendants." See D.E. #82-1. The June 9 Order further provided that "Sussman & Watkins shall deposit said amount with the Bank of America . . . to be held in a separate escrow account . . . pending further order of this Court." Id.

According to the terms of the June 9 Order, as well as the original order of settlement approval, entered on April 25, 2011 (the "April 25 Order"), the Firm's legal fee award in the Simpson case -- representing two-thirds of a total court-ordered fee payment of up to $11.25 million -- amounts to approximately $7 million. See D.E. #82-2.

---

[1] Plaintiff has also sought leave to amend its Complaint in this action in order to assert a claim to the release of the Simpson escrow and the payment to Plaintiff of the court-ordered future stream of Simpson costs and legal fees. See D.E. #44. If transfer of venue is granted, Plaintiff intends to promptly move for consolidation of this action with the Simpson action.

2
MEM. OF P. & A. IN SUPP. OF RENEWED MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)
CPAM: 4364301.11

On September 30, 2011, LFG National Capital, LLC ("LFG National"), LawFinance Group, Inc. ("LawFinance") and LFG Servicing, LLC ("LFG Servicing," collectively with LFG National and LawFinance, "LFG"), previously moved to transfer this action from this Court to the New York Court pursuant to 28 U.S.C. § 1404(a). See D.E. #46. On October 21, 2011, this Court granted LFG's motion, transferring the case to the New York Court. See D.E. #60. This Court denied a subsequent motion by Defendants to "re-transfer" the action from the New York Court, holding that only the New York Court had jurisdiction over the action after it was transferred to that District. See D.E. #82-3. On November 7, 2011, Defendants brought a Motion to Transfer in the New York Court seeking transfer of this action back to this Court, see D.E. #67, which was granted by Judge Hurd, expressly "without prejudice" to a subsequent transfer of the action by this Court, and not on the basis of the merits of venue, but rather, because this Court granted LFG's original Motion to Transfer as a result of a clerical error. See D.E. #87. This action was then transferred back to this Court on December 2, 2011. See D.E. #89. No court has ruled on the merits of transfer.

## ARGUMENT

### A.   Standard for Transfer of Venue

Pursuant to 28 U.S.C. § 1404(a), "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district in which it might have been brought." The purpose of § 1404(a) is to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Van Dusen v. Barrack, 376 U.S. 612, 616 (1964).

In exercising its discretion to transfer an action under § 1404(a), "various factors have been approved by the Ninth Circuit, such as: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiffs' choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen

3

forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof ." F.T.C. v. Watson Pharms., Inc., 611 F. Supp. 2d 1081, 1086 (C.D. Cal. 2009) (citing Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000)).  As explained below, an analysis of these factors demonstrates that they strongly favor transfer of this action.

Considerations of judicial economy are also a permissible basis for transfer pursuant to § 1404(a).  See Fisher v. Las Vegas Hilton Corp., 47 Fed. Appx. 824, 826 (9th Cir. 2002) (affirming transfer order based upon "the convenience of witnesses, the interest of justice, and judicial economy").  Transfer is particularly appropriate where an action concerns property located in another district.  For example, in Leskinen v. Halsey, No. 2:10–cv–03363, 2011 WL 4056121, *6 (E.D. Cal. Sept. 12, 2011), the judge recommended that the action be transferred to the Eastern District of New York, holding that "venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because the property that is at the heart of this dispute is located in that district."  See also Edwards v. Mallory, No. C-96-2049, 1996 WL 681973, *2 (N.D. Cal. Nov. 18, 1996) (granting defendants' motion for a change in venue, holding that "venue is not appropriate in this district because the subject property . . . is situated in [Nevada]"); Rabiea v. First Nat. Bank of Pennsylvania, No. CV 08-0603, 2008 WL 2562004, *1 (E.D.N.Y. June 26, 2008) (transferring venue to Pennsylvania based on the location of the collateral at issue).

**B.   The New York Court Is The Appropriate Venue For This Action**

    **1.   The Action Could Have Originally Been Brought In The New York Court**

        **a.   The New York Court Has Subject Matter Jurisdiction Over the Dispute**

The New York Court plainly has subject matter jurisdiction over this dispute, because the dispute implicates the question of entitlement to a settlement escrow fund

4

MEM. OF P. & A. IN SUPP. OF RENEWED MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)

CPAM: 4364301.11

established pursuant to the New York Court's April 25 Order and June 9 Order.[2] See Boeing Co. v. Van Gemert, 444 U.S. 472, 478, 100 S.Ct. 745, 749, 62 L.Ed.2d 676 (1980). It is well settled that courts have subject matter jurisdiction over a claim to a fund established by that court. See id. Indeed, the interpretation and application of the New York Court's orders constitute a federal question for purposes of subject matter jurisdiction. See Eyak Native Village v. Exxon Corp., 25 F.3d 773, 777 (9th Cir. 1994) (holding that an action to obtain relief from a federal judgment presents a federal question); see also Egri v. Connecticut Yankee Atomic Power Co., 270 F. Supp. 2d 285, 289 (D. Conn. 2002) (holding that "jurisdiction would lie in this Court based on the claims alleged in the complaint. Those claims arise under federal law because each requires interpretation of and/or launches a challenge against the Agreement contained in the Order, which constitutes a 'law of the United States' for purposes of 28 U.S.C. § 1331"); Boeing, 444 U.S. at 478, 100 S.Ct. at 749 (finding the court had subject matter jurisdiction to determine attorney's fees to be taken from a common fund). The interpretation and application of a federal court's settlement orders constitutes a federal question for purposes of subject matter jurisdiction. See Egri, 270 F. Supp. 2d at 289.

  Moreover, it is beyond serious dispute that the federal courts have ancillary jurisdiction – codified by the supplemental jurisdiction statute, 28 U.S.C. § 1367 – to determine the question of entitlement to the Simpson fee and escrow fund, as well as all

---

[2] Plaintiff's Proposed Amended Complaint, D.E. # 55-1 clearly implicates these questions, and the original Complaint – because it asserts liability under the Loan Agreement and a valid lien over all of the Firm's fees and costs (including the Simpson fee) also asserts the essential elements of a claim to the Simpson fee. The basis for subject matter jurisdiction may appropriately be clarified by amendment of the Complaint. See e.g., Maya v. Centex Corp., 658 F.3d 1060, 1069 (9th Cir. 2011) (holding that "plaintiffs should be permitted to amend their complaint" to adequately allege elements of Article III standing); Peros v. Nutribiotic, Inc., No. 1:10-cv-2376, 2011 WL 87166, *2 (E.D. Cal. Jan. 10, 2011) (finding diversity jurisdiction lacking as pled in original complaint, but granting leave to amend where "it appears that Plaintiff may be able to amend his Complaint to establish federal question jurisdiction"); Corporacion Venezolana de Fomento v. Vintero Sales Corp., 477 F. Supp. 615, 618-19 (S.D.N.Y. 1979) (holding that courts "allow[] amendments that change the entire theory of subject matter jurisdiction upon which the parties rely," and that "leave to amend the pleadings to allege different bases of subject matter jurisdiction will be granted if it is shown that jurisdiction exists under any other theory of subject matter jurisdiction").

CHADBOURNE & PARKE LLP
350 South Grand Avenue, 32nd Floor
Los Angeles, CA  90071 (213) 892-1000

other questions forming part of the same Article III "case or controversy" as the claim to that fee.  See Boykin v. McCoy, 384 Fed. Appx. 579, 581 (9th Cir. 2010) (holding that "[d]istrict courts have ancillary jurisdiction over [fee] disputes even though they regularly implicate questions of state law," as such disputes are "closely related to the court's ability either to render an efficacious judgment or to control the litigation before it").

### b. The New York Court Has Personal Jurisdiction Over the Defendants

Because this dispute revolves around the question of entitlement to a fee earned by Defendants in the New York Court through their litigation efforts there, it is clear that this dispute "arises from" Defendants' contacts with that District, such that the New York Court has personal jurisdiction over the Defendants.  Personal jurisdiction over defendants in a fee dispute is proper in the district where the fee in question was earned.[3]  See, e.g., Stone v. Patchett, No. 08 CV 5171, 2009 WL 1108596, *8-10 (S.D.N.Y. April 23, 2009) (finding that plaintiff made a prima facie showing that the attorney was subject to personal jurisdiction under New York long-arm statute where attorney had a fee agreement regarding joint representation of a client with other attorneys, one of which was the plaintiff who practiced in New York state); 3H Enters., Inc. v. Dwyre, 182 F. Supp. 2d 249, 257 (N.D.N.Y. 2001) (finding prima facie showing of personal jurisdiction under New York long-arm statute over Texas attorney "who committed the purposeful act of having process served in New York"); Sluys v. Hand, 831 F. Supp 321, 324 (S.D.N.Y. 1993) (finding personal jurisdiction under New York long-arm statute "over an Indiana attorney who sent debt collection letters to a debtor in New York, when the debt collection practices were the subject of the lawsuit").  See also Trinity Indus., Inc. v. Myers & Assocs., Ltd., 41 F.3d 229, 231 (5th Cir. 1995) (holding that two attorney defendants were subject to personal jurisdiction in New York

---

[3] New York law governs the question of whether a New York federal court has personal jurisdiction over Defendants.  See Foster-Milburn Co. v. Knight, 181 F.2d 949, 951 (2d Cir. 1950) (Hand, J.).

CHADBOURNE & PARKE LLP
350 South Grand Avenue, 32nd Floor
Los Angeles, CA  90071 (213) 892-1000

where one attorney's contacts with the forum included appearing pro hac vice in that district court, and the other attorney completed several patent applications and appeared in that district court's litigation for eight months); Joye v. Heuer, 66 F.3d 316, 1995 WL 552028, *3 (4th Cir. 1995) (Table) (finding personal jurisdiction over attorney who represented client that was a resident of the forum state, and who attended depositions in the forum state).

Finally, to the extent that this dispute involves the Simpson escrow fund, the dispute involves a claim to what Defendants themselves characterize as a "res" located in the New York Court, see D.E. #47-1, Ex. B at 5 (the "GE Litigation Answer"), and in rem jurisdiction in that Court is therefore plainly established. See In re Johns-Manville Corp., 600 F.3d 135, 151, 153 n.13 (2d Cir. 2010) ("[D]efining in rem jurisdiction as [a] court's power to adjudicate the rights to a given piece of property," and stating that when "jurisdiction is in rem in nature . . . it permits a determination of all claims that anyone, whether named in the action or not, has to the property or thing in question").

### 2. Plaintiff Need Not Show a "Change in Circumstances" to Justify a Change of Venue, But Has Made Such a Showing

At the outset, contrary to Defendants' contention, there is no requirement that Plaintiff show any such "change in circumstances." See Gatdula v. CRST Int'l, Inc., No. CIV. 2:10-58, 2011 WL 445798, *2 n.3 (E.D. Cal. Feb. 08, 2011) ("although some courts require a plaintiff to show that circumstances have changed since the action was filed . . . the court declines to place this additional burden on plaintiffs."); see also Wash. Pub. Utils. Grp. v. U.S. Dist. Court for W. Dist. of Wash., 843 F.2d 319, 327 (9th Cir. 1987) (holding that Plaintiff did not have to show a change of circumstances to support a motion to transfer venue).

In any event, while this action could have been brought initially in the New York Court, the June 9 Order, establishing an escrow fund under that Court's exclusive jurisdiction into which a large proportion of Plaintiff's collateral was placed -- plainly constituted a change in circumstances sufficient to justify Plaintiff in moving for a

transfer of venue under 28 U.S.C. § 1404. In particular, the feasibility and efficiency of litigating Plaintiff's claims against the Firm in a district other than the place where the escrow fund was established, was substantially diminished by the New York Court's June 9 Order.[4] The June 9 Order plainly shifted the center of gravity of this litigation, insofar as the largest identifiable portion of the collateral forming the subject matter of the dispute was placed under the exclusive control of the New York Court.

### 3. The Relevant Factors Militate In Favor of Transferring this Action to the New York Court

#### a. The Simpson Escrow Fund, As Collateral Under the Loan Agreement, is Property That is the Subject of This Action

This is an action brought by a secured lender to collect on a debt. See D.E. #1. The largest clearly identifiable pool of collateral securing Plaintiff's loans consists of the Firm's right to receive a four-year stream of fee and cost payments pursuant to the Simpson settlement, totaling approximately $7 million -- a sum that accounts for nearly two-thirds of the amounts currently due under the Loan Agreement. Thus, the majority of the assets around which this dispute resolves are located in the State of New York. Indeed, Defendants concede that the Simpson fee constitutes property located in the Northern District of New York. See GE Litigation Answer at 5. The New York situs of the property at issue strongly favors transfer. See Leskinen, 2011 WL 4056121, at *6; Edwards, 1996 WL 681973, at *2; Rabiea, 2008 WL 2562004, at *1.

In fact, the case for transfer here is more compelling than in Leskinen, Edwards, or Rabiea. After Plaintiff filed this action in this District, the first of the Firm's annual Simpson payments was placed into an escrow account under the exclusive control of Judge Hurd. Because the property at issue is not only located in New York, but consists of a settlement fund established by order of a New York court, Plaintiff's entitlement to

---

[4] LFG National did not file this motion earlier because the parties had been engaged in extensive efforts to settle this action, including efforts to mediate this dispute, which proved unsuccessful. See D.E. # 43 (reflecting the Court's July 28, 2011 grant of continuances of pending briefing dates in order to accommodate the parties' mediation efforts). Prior to the failure of the mediation, LFG National did not wish to burden the Court with procedural motion practice that would become moot in the event of a settlement of this dispute.

these funds may only be adjudicated by that court.[5] This case therefore involves unique and compelling bases for a transfer order that go well beyond the physical location of collateral.

### b. Judicial Economy Favors Venue in the New York Court

Moreover, an order of transfer would serve both the convenience of the parties and the interests of judicial economy, because the core issues in this action must inevitably be decided by Judge Hurd in the course of adjudicating entitlement to the Simpson escrow fund and prospective Simpson fee payments. It is hornbook law that without a valid debt, there can be no valid lien, and that a secured creditor may not enforce its liens in the absence of a default by the debtor. See, e.g., 51 Am. Jur. 2d Liens § 13. Accordingly, in order to prove its entitlement to the Simpson escrow and future Simpson fees, Plaintiff will need to prove the validity of the Firm's debt under the Loan Agreement and the existence of defaults by the Firm that render the loan balance immediately due, such that Plaintiff is entitled to exercise its lien rights with respect to the collateral securing its loan to the Firm. If the Firm is not in default under the Loan Agreement, but instead possesses affirmative claims against Plaintiff and Counterdefendants, there will be no default on a valid debt sufficient to entitle Plaintiff to collect the Simpson escrow funds.

All of these questions will inevitably be placed squarely before Judge Hurd in the course of resolving the question of entitlement to the Simpson funds, and these very same questions form the core of the issues in dispute here. Quite simply, it makes no sense to litigate precisely the same issues in parallel in two federal district courts located on opposite sides of the United States. See King-Scott v. Univ. Med. Pharm. Corp., No. 09-cv-0251, 2010 WL 1815431, at *2 (S.D. Cal. May 6, 2010) (granting transfer where it would "avoid duplicative litigation, further judicial economy and prevent the waste of resources"); cf. West Coast, Inc. v. Snohomish County, 33 F. Supp.

---

[5] Indeed, the Firm has conceded that only Judge Hurd may determine entitlement to the Simpson escrow account, as reflected in its pleadings in a New York case, where the Firm is similarly defending non-payment of a loan. See GE Litigation Answer at 5.

9

MEM. OF P. & A. IN SUPP. OF RENEWED MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)

CPAM: 4364301.11

2d 924, 925-26 (W.D. Wash. 1999) (remanding to state court claims that overlapped with those implicated by an existing, non-removable state court action in order to avoid "duplicative litigation, wasted judicial resources, needless expenditures for both parties, conflicting case schedules, a potential race to judgment, and/or the possibility of inconsistent verdicts").

### c. New York is a More Convenient Forum for All Parties

For the same reasons that the parallel litigation of this dispute in two federal courts threatens a waste of judicial resources, such an outcome would also seriously inconvenience all parties to this action. It is obvious that litigating an identical dispute in two different federal districts at the same time will increase legal fees and costs for all parties, generate duplicative and overlapping discovery and motion practice, create the potential for scheduling conflicts, and provide fertile ground for gamesmanship regarding timing issues, insofar as the first action to be adjudicated will, through application of the doctrines of res judicata and collateral estoppel, bind the parties in the second action. Transfer is therefore appropriate. See Watson, 611 F. Supp. 2d 1081, 1086 (holding that "differences in the cost of litigation" are a factor relevant to transfer under § 1404(a)); West Coast, Inc., 33 F. Supp. 2d at 925-26.

Moreover, insofar as Defendants are located in Florida, litigating this action in New York -- where Defendants litigated the Simpson case and generated the Simpson fee -- is no less convenient than the adjudication of this action in California. Indeed, Defendants are already litigating a similar case in New York State. See General Electric Capital Corp. v. Willie E. Gary, et al., No. 11-CV-03671(VM) (S.D.N.Y) (the "GE Litigation"). While Plaintiff and Counterdefendants are located in California and Nevada, depositions can readily be scheduled in any location convenient for the parties, and Plaintiff and Counterdefendants believe that the transfer of this action would not inconvenience anyone.

The other factors relevant to transfer, including the Plaintiff's choice of forum, the parties' contacts with the forum, the contacts with the forum relating to the cause of

action at issue, the availability of compulsory process to procure the attendance of third-party witnesses, and the ease of access to sources of proof, see Watson, 611 F. Supp. 2d at 1086, each favor a transfer to the New York Court or are neutral. See Metz v. U.S. Life Ins. Co. in City of New York, 674 F. Supp. 2d 1141, 1149 (C.D. Cal. 2009). (holding that the "ease of access to documents does not weigh heavily in the transfer analysis, given that advances in technology have made it easy for documents to be transferred to different locations").

While Plaintiff initially brought this action in this Court, Plaintiff's initial choice of forum has been overtaken by events, insofar as the New York Court has placed the bulk of the collateral at issue in an escrow account under its exclusive control.

Insofar as Plaintiff made the initial motion to transfer venue to the New York Court, considerations relating to Plaintiff's choice of forum favor that court as the forum for this dispute. Moreover, another creditor has commenced an action in the Southern District of New York asserting entitlement to the same funds. See generally RJN, Ex. A (the "GE Amended Complaint"). Because the Simpson escrow fund arises from the Firm's contacts with the New York Court, the factors relating to forum contacts favor a transfer to that court as well.

It is unlikely that this action between lender and debtor to collect on a loan agreement will involve a significant number of third-party witnesses (and any such witnesses, such as the Firm's opposition counsel and co-counsel in the Simpson action, see D.E. #36, ¶¶ 9, 25, 27-29, 33-34, 39-42, 63-64, are as likely to be located in New York or Florida as California), and thus the factor looking to access to such witnesses is neutral.

Additionally, while the Loan Agreement is governed by California law, this factor does not provide a significant reason to grant Defendants' motion to transfer. See Howard v. Judge Law Firm, Civ. No. 09-1644, 2010 WL 2985686, at *5 (D. Minn. July 26, 2010) (noting that "in the context of a motion to transfer under § 1404(a), the general view is that courts can just as easily apply the law of another state . . . as their

own"). Finally, while the Loan Agreement contains a California choice-of-forum clause, that clause is permissive in nature, providing that venue shall be proper in California "if Lender so elects." See D.E. #23-1 at § 23. Accordingly, if Plaintiff wishes for this dispute to be litigated in the New York Court, the Loan Agreement creates no obstacle to the initial transfer to that forum.

**C.   Defendants Have Admitted that the New York Court is the Appropriate Forum for the Dispute**

Any argument by the Firm that transfer to the New York Court is not appropriate will be impossible to reconcile with the position the Firm has taken in a similar litigation brought by another party asserting liens over the Firm's assets, including the Simpson fee. In the GE Litigation, Defendants Willie Gary ("Gary") and the Firm were sued by plaintiff GE Capital for allegedly breaching a contract to pay GE Capital funds pursuant to a loan agreement. See GE Amended Complaint at ¶ 38-49. The facts of the GE Litigation mirror those of the instant action – the Defendants borrowed funds pursuant to a loan agreement, GE Capital purports to have perfected a security interest in attorneys' fees paid to the Firm pursuant to the loan agreement, and the Defendants, now allegedly in default of the loan agreement, have refused to honor GE Capital's security interest in attorney's fees. Compare GE Amended Complaint ¶¶ 40-42 ("GE Capital has performed each and every of its obligations under the Agreements . . . GE Capital has a specific, perfected security interest in the [Simpson escrow fund], such obligation having been created pursuant to the Agreements . . . [Defendants] anticipatorily breached the Agreements . . . .") with Plaintiff's Proposed Amended Complaint at ¶ 39-40 ("Plaintiff holds a valid lien over substantially all assets of Gary, Williams, including all fees and costs to be paid to Gary, Williams in the Simpson case . . . Gary, Williams has breached the Loan Agreement and the entire balance thereunder is past due . . . .").

Both GE Capital and LFG National claim to have a perfected security interest in the settlement monies owed to the Firm in the Simpson action. See GE Amended

12

Complaint ¶ 12; Plaintiff's Proposed Amended Complaint ¶ 15. Moreover, the <u>Simpson</u> escrow fund lies at the center of both disputes: according to the GE Amended Complaint ¶ 35, "this dispute concerns rights and obligations under unambiguous agreements, and GE Capital's right to payment [of the <u>Simpson</u> escrow funds] pursuant to the NY Lawsuit Payment Obligation is unassailable." Plaintiff's Proposed Amended Complaint similarly asserts a direct claim to the <u>Simpson</u> escrow fund. Id. at ¶ 40. Both actions have the same essential characteristics: a claim that the Firm has breached its obligations under a loan agreement secured by, among other things, the <u>Simpson</u> fee.

Despite these obvious and patent similarities, the Firm has taken two contradictory positions with regards to where venue is proper for each action. In its Answer in the GE Litigation, Gary and the Firm stated that the United States District Court for the Southern District of New York "lacks jurisdiction over this matter as [the New York Court] has exercised jurisdiction over the <u>res</u> and directed Sussman as to its proper disposition and this Court should decline to exercise jurisdiction over the same <u>res</u>." <u>See</u> GE Litigation Answer at 5. Despite stating that only the New York Court has jurisdiction over the GE Litigation because that court has jurisdiction over the <u>Simpson</u> settlement fund, Defendants have since suggested that the New York Court *lacks* jurisdiction over a claim to the <u>Simpson</u> fee. <u>See</u> D.E. #86, Ex. B at 11-13 ("Defendants' Opposition to Original Motion to Transfer Venue") ("At the time Plaintiff filed the complaint—and now—the Northern District of New York did not (and does not) have subject matter jurisdiction . . . and venue was not (and is not) proper.").[6] Any suggestion by Defendants that the New York Court is not the proper venue for this dispute, and that the New York Court lacks jurisdiction to hear this dispute would not only be meritless as a matter of law, but patently made in bad faith

---

[6] Defendants' Opposition to Original Motion to Transfer Venue was filed in this Court after the case had been transferred to the New York Court, but before it had been re-transferred back to this Court. <u>See</u> Memorandum in Opposition to Motion to Transfer Case to Northern District of New York at 11-13, <u>LFG National Capital, LLC</u> v. <u>Gary Williams, Finney, Lewis, Watson and Sperando, P.L. et al.</u>, No. CV11-04538 PSG (PJWx) (C.D. Cal. Oct. 24, 2011) (No. 63).

13
MEM. OF P. & A. IN SUPP. OF RENEWED MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)

CPAM: 4364301.11

when viewed in the context of the signed pleadings made by these same Defendants in the GE Litigation. Accordingly, Defendants should be estopped from making any such argument. See e.g. Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782 (9th Cir. 2001) (finding judicial estoppel appropriate to "protect against a litigant playing fast and loose with the courts . . . .").

Likewise, any argument that the Simpson settlement fund is not property (see Defendants' Opposition to Original Motion to Transfer Venue at 14-15), would be similarly irreconcilable with Defendants' submissions in the GE Litigation: as stated by Gary and the Firm in its GE Litigation Answer, the Simpson settlement fund is a "res" which the New York Court has jurisdiction over. See GE Litigation Answer at 5.

## CONCLUSION

For the reasons stated above, Plaintiff and Counterdefendants respectfully request that their Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) be granted.

Dated: December 16, 2011        CHADBOURNE & PARKE LLP

                                By:      /s/ Robin D. Ball
                                         Robin D. Ball

                                *Attorneys for Plaintiff and Counterdefendants*
                                LFG NATIONAL CAPITAL, LLC,
                                LAWFINANCE GROUP, INC. and LFG
                                SERVICING, LLC